IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2004

## MARTIN PALMER JONES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Unicoi County**
**No. 4861     Lynn W. Brown, Judge**

_____

**No. E2004-00240-CCA-R3-PC - Filed December 15, 2004**

_____

This is an appeal from denial of post-conviction relief.  The Defendant, Martin Palmer Jones, was convicted of two counts of first degree felony murder upon entry of best-interest guilty pleas.  He was sentenced to two terms of life imprisonment, which were to be served consecutively.  The Defendant's sentences were affirmed on direct appeal.  See State v. Martin Palmer Jones, No. 03C01-9803-CR-00084, 1999 WL 93144 (Tenn. Crim. App., Knoxville, Feb. 25, 1999).  On petition for post-conviction relief, the Defendant claimed he received ineffective assistance of counsel in conjunction with his guilty pleas.  The trial court denied the petition, and the Defendant appealed to this Court.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and JOHN EVERETT WILLIAMS, JJ., joined.

Bob McD. Green, Johnson City, Tennessee, Tennessee, for the appellant, Martin Palmer Jones.

Paul G. Summers, Attorney General and Reporter; Kathy Aslinger, Assistant Attorney General; Joe Crumley, District Attorney General; and Anthony Clark and Fred Lance, Assistant District Attorneys General, for the appellee, State of Tennessee.

### OPINION

### FACTS

Following his arrest in October of 1996, the then fifteen-year-old Defendant admitted on three separate occasions that he shot and killed the two victims, John Harder and Marsena Ratliff.  Just days prior, the Defendant stole a car from a local college and burglarized a residence, stealing several guns.  The Defendant drove up Unaka Mountain in east Tennessee intending to cross into North Carolina when he noticed a car parked at a scenic overlook and decided to acquire additional

funds through robbery. The Defendant parked nearby and approached his two victims with a .22 caliber rifle in hand. In upholding the conviction on direct appeal, this Court summarized the ensuing crimes as follows:

> [W]ithout any warning, [the Defendant] shot Harder once in the head. The Defendant confessed that he shot Harder twice more because "he didn't look like he was dead . . . I didn't want him to suffer." At that point, the Defendant shot Ms. Ratliff, who had attempted to flee.

Jones, 1999 WL 93144 at *1. After killing the victims, the Defendant took one dollar from Mr. Harder's pocket and ten dollars from Ms. Ratliff's purse.

The Defendant denied sexually accosting Ms. Ratliff, but police found her body partially undressed. In his haste to get down the mountain, the Defendant wrecked his stolen car and continued his flight on foot. Two hunters came upon the wreck and witnessed the Defendant hiding weapons and other items in a wooded area. Later that same evening, the Defendant was found in a nearby trailer and apprehended by North Carolina authorities. When the Defendant was discovered, he had in his possession the eleven dollars in stolen money, the murder weapon, and Mr. Harder's driver's licence.

Following a hearing in Juvenile Court, the Defendant was transferred to the Criminal Court of Unicoi County to be tried as an adult. The Defendant was charged with two counts of felony murder. At his plea hearing in August of 1997, the Defendant renounced his earlier confessions and denied killing the victims. The Defendant claimed someone else stole the car and he just happened to find it on the mountain along with the two victims. In his revised story, he said he merely picked up the rifle, took the money and driver's license from the dead victims, got in the car and drove away. Professing innocence, the Defendant nevertheless entered two "best interest" guilty pleas, or Alford pleas,[1] as part of a plea agreement whereby he would get two life sentences (with the possibility of parole).

In accepting the guilty pleas, the trial court determined that the evidence presented by the Tennessee Bureau of Investigation at the hearing established sufficient facts to establish the crimes, and characterized the Defendant's revised narration as "absolutely incomprehensible." The trial court found the Defendant guilty as charged and imposed two life sentences, but reserved the issue of concurrent or consecutive sentences for a future sentencing hearing.

At the conclusion of the Defendant's sentencing hearing, the trial court ordered the Defendant to serve his two life sentences consecutively. The Defendant appealed his consecutive sentencing

---

[1]Under what is commonly termed an "Alford plea," a Defendant is allowed to enter a plea of guilty when the Defendant believes it is in his or her best interest to accept a plea agreement, but while still professing innocence. See North Carolina v. Alford, 400 U.S. 25, 37 (1970). A Tennessee court has the discretion to accept an Alford plea only if there is a factual basis for the plea. See State v. William, 851 S.W.2d. 828, 830 (Tenn. Crim. App. 1992).

to this Court, which affirmed the sentences.  See Jones, 1999 WL 93144 at *1.   The Defendant timely filed a petition for post-conviction relief alleging, inter alia, ineffective assistance of trial counsel.  Counsel was appointed and amended petitions were filed.  At the post-conviction hearing conducted in January of 2004, the Defendant asserted several grounds as a basis for ineffective assistance of counsel, one of which was his trial counsel's failure to adequately explain the nature and effect of the best-interest guilty plea.  We also note that at the post-conviction hearing much of the testimony centered around the Department of Correction's interpretation of the Defendant's sentence as two life sentences without parole, an issue which was resolved by agreement of all parties involved and by order of the trial court.[2]  Upon conclusion of the hearing, the trial court denied the Defendant post-conviction relief.  The Defendant timely filed a Notice of Appeal with this Court.

**ANALYSIS**

The Defendant claims that his appointed trial attorneys provided ineffective assistance of counsel because they failed to fully explain the nature of the charges and the effects of his best-interest guilty pleas and plea agreement.  Specifically, the Defendant asserts that his attorneys should have deferred the entry of the Defendant's "nolo contendere plea" until the Defendant was assured of the number of years that he must actually serve before he could be considered eligible for parole.  The Defendant now asserts that his trial counsel's failure to withdraw or defer his guilty pleas after questions on the actual "length" of a life sentence were raised at the plea hearing amounts to ineffective assistance of counsel.  We disagree.

To sustain a petition for post-conviction relief, a defendant must prove his or her factual allegations by clear and convincing evidence at an evidentiary hearing.  See Tenn. Code Ann. § 40-30-110(f); Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999).  Upon review, this Court will not re-weigh or re-evaluate the evidence below; all questions concerning the credibility of witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the trial judge, not the appellate courts.  See Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997).  The trial judge's findings of fact on a petition for post-conviction relief are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings.  See Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578.

Both the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution guarantee a criminal Defendant the right to representation by counsel.  See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  Both the United States Supreme Court and the Tennessee Supreme Court have recognized that the right to such representation includes the right to "reasonably effective" assistance, that is, within the

---

[2]The trial court noted that the Judgments for the two convictions clearly indicated "life" sentences, and not "life without parole."  The State agreed that the plea bargain and sentence mandated two life sentences with the possibility of parole.  The Department of Correction conceded that the Defendant's status as serving two life sentences without parole was a clerical error on its part.  Accordingly, the trial court issued an order to have the Department of Correction correct the Defendant's status in its files.

range of competence demanded of attorneys in criminal cases.  See Strickland v. Washington, 466 U.S. 668, 687 (1984); Burns, 6 S.W.3d at 461; Baxter, 523 S.W.2d at 936.

A lawyer's assistance to his or her client is ineffective if the lawyer's conduct "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686.  This overall standard is comprised of two components: deficient performance by the Defendant's lawyer, and actual prejudice to the defense caused by the deficient performance.  See id. at 687; Burns, 6 S.W.3d at 461.  The Defendant bears the burden of establishing both of these components by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f); Burns, 6 S.W.3d at 461.  The Defendant's failure to prove either deficiency or prejudice is a sufficient basis upon which to deny relief on an ineffective assistance of counsel claim.  See Burns, 6 S.W.3d at 461; Goad v. State, 938 S.W.2d 363, 370 (Tenn. 1996).

This two-part standard of measuring ineffective assistance of counsel also applies to claims arising out of a guilty plea.  See Hill v. Lockhart, 474 U.S. 52, 58 (1985).  The prejudice component is modified such that the Defendant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59; see also Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998).

In evaluating a lawyer's performance, the reviewing court uses an objective standard of "reasonableness." See Strickland, 466 U.S. at 688; Burns, 6 S.W.3d at 462.  The reviewing court must be highly deferential to counsel's choices "and should indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Burns, 6 S.W.3d at 462; see also Strickland, 466 U.S. at 689.  The court should not use the benefit of hindsight to second-guess trial strategy or to criticize counsel's tactics, see Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982), and counsel's alleged errors should be judged in light of all the facts and circumstances as of the time they were made.  See Strickland, 466 U.S. at 690; Hicks, 983 S.W.2d at 246.

A trial court's determination of an ineffective assistance of counsel claim presents a mixed question of law and fact on appeal.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).  This Court reviews the trial court's findings of fact with regard to the effectiveness of counsel under a de novo standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise.  See id.  "However, a trial court's conclusions of law-- such as whether counsel's performance was deficient or whether that deficiency was prejudicial--are reviewed under a purely de novo standard, with no presumption of correctness given to the trial court's conclusions." Id.

The Defendant points to a dialog between the trial judge, the State, and his trial counsel at the plea hearing which he asserts "illustrates the ambivalence and uncertainty" pertaining to the issue of the number of years required to be served under a life sentence before parole could be considered.  The record reveals that during the course of the plea hearing the trial judge commented that a "life sentence can be served in twenty (20) to twenty-five (25) years," citing a case where the Defendant

had been convicted of murder in 1980. The State immediately brought to the attention of the court a "recent State Attorney General's opinion that says a life sentence is fifty-one (51) years."[3] The matter was not pursued further at that time, and the guilty pleas were entered and accepted.

The Defendant correctly notes the significant difference between the two competing theories raised at the plea hearing: if sentenced to two life terms to be served consecutively, he would be eligible for parole in as few as forty years or as many as 102 years. However, the Defendant admits in his brief that he was advised by his trial counsel that a life sentence required confinement of fifty-one years before eligibility for parole. Nonetheless, the Defendant asserts through counsel that given his situation, age, and lack of experience, it is "entirely reasonable to believe and conclude" that the Defendant believed "the judge [knew] more than the PD." Alleging his Alford pleas were not made knowingly or intelligently, the Defendant now claims his trial counsel was deficient for failing to advise him to defer entry of his guilty pleas until the issue of the requisite number of years incarcerated under a life sentence before becoming parole eligible was clarified. In support of his claim, the Defendant cites the United States Court of Appeals for the Sixth Circuit case of Sparks v. Sowders, 852 F.2d 882 (6th Cir. 1988), which held that "gross misadvice concerning parole eligibility can amount to ineffective assistance of counsel." Id. at 885.

In Tennessee, when a defendant's claim of ineffective assistance of counsel is based on inadequate advice concerning a guilty plea, as in the case sub judice, courts generally distinguish between failure to inform of the direct and indirect consequences of the guilty plea. While counsel's failure to inform a Defendant of the direct consequences of a guilty plea may constitute ineffective assistance of counsel, failure to inform of the indirect consequences of a guilty plea normally does not. See Adkins v. State, 911 S.W.2d 334, 350 (Tenn. Crim. App. 1994).

We note that the post-conviction court found that the Defendant's trial counsel gave him the correct information, advising him that he did face the possibility of 102 years of confinement before becoming eligible for parole. The Defendant did not testify that his lawyer gave him erroneous advice. The Defendant's appointed trial counsel testified that, with regard to a life sentence, the Defendant, "knew with certainty that we had advised him on numerous times that as we understood the law, and as it would be applied at that point in time that he would have to serve fifty-one years [per life sentence] before he was eligible for any kind of parole." Thus, even if an error in advising a client on the indirect consequence to a guilty plea could be considered deficient representation, there simply was no error--and therefore no ineffective assistance of counsel–in this particular case.

Moreover, the Defendant has failed to prove by clear and convincing evidence the existence of any other facts which would support his assertion that his trial counsel's performance was constitutionally deficient. At the post-conviction hearing, the Defendant admitted that he met

---

[3]Tenn. Op. Atty. Gen. No. 97-098 (1997), interpreting Tennessee Code Annotated section 40-35-501, states that anyone sentenced to life imprisonment for a murder offence committed after July 1, 1995, must serve a mandatary minimum of fifty-one years of confinement before becoming eligible for release or parole. See also State v. Charles Golden, No. 02C01-9709-CR-00362, 1998 WL 518071 (Tenn. Crim. App., Jackson, Aug. 21, 1998) (holding that the minimum release eligibility for a life sentence for crimes committed after July 1, 1995, is fifty-one years).

"extensively" with his trial counsel, and they spent "hundreds of hours" on his case. The Defendant agreed that his attorneys "fought for [him] every step of the way," and conceded that their failure to predict the possible Department of Correction error regarding his parole eligibility did not amount to ineffective assistance of counsel. At the post-conviction hearing, the trial judge found no evidence of deficient representation. With regard to the Defendant's claim that his trial counsel did not sufficiently explain the nature of his plea, the trial court ruled: "it's not borne out by the proof." The trial judge concluded: "The proof in this case is overwhelming. I don't know what defense counsel could have done. From the record it appears the court finds that they [did] everything they possibly could."

The Defendant does not claim that the information he received from his trial counsel was inaccurate. All the evidence indicates that the Defendant was given correct and adequate advice pertaining to the consequences of his guilty pleas. Based on the information contained in the record, we conclude that the Defendant has failed to establish by clear and convincing evidence that his trial counsel's representation was constitutionally deficient.

The Defendant admitted that he discussed his best interest guilty plea at length with his trial attorneys, they explained the "ramifications" of his plea, and they made no guarantees concerning his sentence. Despite the comments from the judge regarding "twenty or twenty-five years," the Defendant was fully and correctly informed by his trial counsel that a life sentence required fifty-one years in confinement before becoming eligible for parole. In sum, the record reveals that the Defendant both fully understood the nature of his best-interest guilty plea, and admitted that it was his own decision to enter that plea. The Defendant has failed to demonstrate that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill, 474 U.S. at 59. Thus, the Defendant has also failed to show prejudice.

The Defendant failed to prove by clear and convincing evidence that his trial counsel's representation fell outside the wide range of reasonable professional assistance. Based on the evidence in the appellate record, the Defendant's trial counsel provided representation that was neither deficient nor prejudicial. Accordingly, we conclude that the Defendant's trial counsel did not provide ineffective assistance of counsel. This issue has no merit.

## CONCLUSION

We affirm the trial court's decision denying the Defendant post-conviction relief.

_____
DAVID H. WELLES, JUDGE